UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

EVELYN CORREA,

        Plaintiff,                   <u>MEMORANDUM AND ORDER</u>

   -against-

MANA PRODUCTS, INC., NIKOS MOUYARIS,    Civil Action No.
in his capacity as principal, owner,    CV-04-2344(DGT)
and/or shareholder of Defendant
Mana, and in his individual capacity
as an aider and abettor, PETER
MOUYARIS, in his capacity as
principal, owner, and/or shareholder
of Defendants, and in his individual
capacity as an aider and abettor,
and BARBARA NOVICK, in her capacity
as principal, owner, and Executive
VP of Defendant Mana, and in her
individual capacity as an aider and
abettor,

        Defendants.

----------------------------------X

Trager, J:

    Plaintiff Evelyn Correa ("plaintiff") brings this

action against defendant Mana Products, Inc. ("Mana") and its

management (collectively, "defendants") for alleged retaliatory

discharge in violation of Title VII and 42 U.S.C. § 1981.

Plaintiff claims that her dismissal was in retaliation for

complaining of unlawful discriminatory practices at Mana and/or

for participating in internal company investigations concerning

charges of unlawful discrimination.  Defendants have filed a

motion for summary judgment.  For the reasons set forth below,

the motion for summary judgment is granted.[1]

## Background

The facts set forth below are undisputed, unless otherwise
noted.  Mana was founded in 1975 and is engaged in the business
of manufacturing and selling cosmetic products.  Mana's
operations are primarily based in two facilities in Long Island
City, New York.  Plaintiff was hired by Mana in May 2003 in the
position of Human Resources/Payroll Administrator ("HR Manager").

As HR Manager, plaintiff's duties included overseeing
payroll as well as traditional human resource functions
including: recruiting, hiring and terminating employees; employee
benefits; employee orientation; updating the employee handbook;
and ensuring that employees complied with Mana policies and
procedures.  Aff. of Ambrose Wotorson in Supp. of Pl.'s Opp. to
Def.'s Mot. for Summ. J. ("Wotorson Aff."), Ex. 14 (Dep. of
Evelyn Correa ("Correa Dep.")) at 12-13.  Plaintiff was
terminated from her employment with Mana on October 8, 2003.  <u>Id.</u>
at 13.

During her employment, plaintiff reported directly to

---

[1] Defendants have moved to dismiss the claims against Peter Mouyaris and Barbara
Novick, as neither was personally involved in the decision to terminate plaintiff.  Plaintiff's
counsel has failed to address this argument in her opposition to defendants' motion for summary
judgment, which was, incidentally, filed many months after it was due.  Accordingly, the motion
to dismiss plaintiff's complaint against Peter Mouyaris and Barbara Novick is granted.

Barbara Novick ("Novick"), Mana's Executive Vice President. Correa Dep. at 13. Mana's workforce of over 500 employees, supervisory staff and owners consist of individuals from relatively diverse ethnic backgrounds. Id. at 13-14. As HR Manager, plaintiff would occasionally have employees come to her with complaints and grievances they had against Mana, and it was her responsibility to try to resolve these issues when possible. Id. at 32-33.

During plaintiff's five-month tenure with Mana, two employees filed complaints against the company with the New York Human Rights Division. According to plaintiff, Novick told her that Mana had never before been the subject of such a complaint.[2] Correa Dep. at 139-40. Nikos Mouyaris ("Mouyaris"), one of Mana's owners, claimed that he lost confidence in plaintiff's judgment after he asked plaintiff about her investigation of the incident leading to one of those complaints and found that she had taken statements from only some of the witnesses, but that she had neglected to take a statement from the manager who was involved. Wotorson Aff., Ex. 16 (Dep. of Nikos Mouyaris ("Mouyaris Dep.")) at 7-20. Plaintiff vigorously disputes that she failed to take a statement from the manager. In any event,

_____

[2] Mana admitted in response to plaintiff's requests for admission that in 2000 a small number of employees filed charges with the National Labor Relations Board claiming that Mana was discriminating against them in retaliation for their support of efforts to unionize. The charges were either dismissed or withdrawn. Mana also admitted that it had been sued by one or more employees prior to plaintiff's employment. Wotorson Aff., Ex. 19.

deciding that he could no longer trust plaintiff, Mouyaris fired her.  _Id._

**(1)**

**Lipstick Department Meetings**

During plaintiff's tenure at Mana there was tension between employees of different national origins in the lipstick manufacturing department.  Correa Dep. at 84.  For example, disputes arose between Guyanese and Dominican employees.  _Id._ Plaintiff investigated these issues along with managers Peter Mouyaris and Jean Bazile ("Bazile").  _Id._ at 85-86.  The investigation took the form of "venting sessions" in the cafeteria where plaintiff met with several groups to discuss issues that were arising.  _Id._

The complaints involved discrimination, general work environment problems such as lack of toilet paper, hand soap and adequate protection of employee clothes from chemicals.  Correa Dep. at 87.  There were also complaints that were related to the conduct of managers Sonny Vengersammy ("Vengersammy"), Bazile and Elta Semexant ("Semexant").  _Id._ at 86-87, 89.  Employees claimed that they were insulted and mistreated by their managers, specifically by Vengersammy and Bazile, because the employees were Hispanic and did not understand English.  _Id._ at 89. Plaintiff brought these complaints to the attention of Nikos

Mouyaris. Id. at 87-88. Plaintiff, along with Nikos and Peter Mouyaris, decided that the best way to handle the situation was to place Semexant, who understood Spanish, as an intermediary between the predominantly Hispanic lipstick department workers and manager Vengersammy, who was not Hispanic. Id. at 90. This did not resolve the problems, and Peter and plaintiff continued to meet every two weeks to discuss these issues with the employees. Id. at 91.

During plaintiff's tenure at Mana, the company received specific complaints of discrimination from employees Yoni Sanchez ("Sanchez") and Rafael Fernandez ("Fernandez"). Correa Dep. at 33, 73. Both Sanchez and Fernandez eventually went on to file discrimination complaints against Mana with the New York State Division of Human Rights ("Human Rights Division"). Both Human Rights Division complaints involved incidents that plaintiff investigated and documented. Id. at 129-134.

## (2)

### Yoni Sanchez's Human Rights Complaint

Vengersammy told plaintiff that one of his subordinates, Yoni Sanchez, was uncooperative and insubordinate. Correa Dep. at 59. On June 17, 2003, on the recommendation of manager Vengersammy, plaintiff gave Sanchez a final written warning that he was insufficiently productive. Correa Dep. at 53, 58.

Plaintiff alleges that prior to drafting Sanchez's final warning she sat in on a conversation between Novick and Mana labor counsel Stanley Schair ("Schair").  Correa Dep. at 57-60. Plaintiff alleges that during that conversation Schair and Novick discussed how to "get rid" of Sanchez.  Id. at 60.  Although Sanchez had some previous incidents in his employment file, there was nothing related to his performance or productivity.  Id. Accordingly, Schair advised plaintiff to "set [Sanchez] up for failure" by setting a productivity requirement for him that he could not meet.  Id.  This plan apparently failed because Sanchez was able to meet the heightened requirements.  Id. at 61. Nowhere does plaintiff allege that she attempted to stop the "setting up" of Sanchez.  Id. at 61-69.

Shortly thereafter, Sanchez complained that an employee hired after him was making more money.  Id. at 43.  Sanchez, who is Dominican, believed that this was a result of discrimination based on his national origin, as the other employee was Puerto Rican.  Id. at 50-51.  Plaintiff spoke with Peter after receiving this complaint, and Peter showed plaintiff a chart that was used to determine employees' pay rates based upon their performance history and attendance.  Id. at 35.

Peter also asked plaintiff to arrange a meeting in which plaintiff and Peter would discuss the pay rate issue with Sanchez.  Correa Dep. at 35-37.  Plaintiff, Peter and Sanchez

then had a meeting in which Peter explained to Sanchez the Mana payment policy which weighs factors such as performance and attendance in addition to years of service. <u>Id.</u> at 39. Sanchez disagreed that he had any performance issues which would warrant a pay disparity. <u>Id.</u> Peter then told Sanchez he could take his complaint to the Human Rights Division or the Department of Labor. <u>Id.</u> at 40. Peter offered to give Sanchez the phone number for the Human Rights Department but also told Sanchez that, in his opinion, Mana had done nothing wrong. <u>Id.</u> at 39. Sanchez declined to take the Human Rights number from Peter. Correa Dep. at 47.

On September 8, 2003, Sanchez filed a complaint with the Human Rights Division in which he alleged that his supervisor – Vengersammy – yelled at him on a daily basis and insulted his intelligence by calling him "stupid" and "donkey." <u>Id.</u> at 125. Plaintiff did not recall ever hearing any complaints from Sanchez regarding these issues. <u>Id.</u> Sanchez's Human Rights Division complaint also mentioned his disagreement with plaintiff's June 17, 2003 final warning. <u>Id.</u> Sanchez alleged that Mana was trying to force him to quit because he was from the Dominican Republic. <u>Id.</u> at 126. Plaintiff alleges that she was removed from the Sanchez investigation once Mana was made aware that he had filed a Human Rights Division complaint. <u>Id.</u> at 150.

Plaintiff did not assist or encourage Sanchez in filing the

charge of discrimination against Mana, <u>id.</u> at 124, nor did she believe that Sanchez had been discriminated against based upon his national origin, <u>id.</u> at 138. The Human Rights Division made a determination that there was no probable cause to support the charge of discrimination. <u>Id.</u> at 126.

**(3)**

**Rafael Fernandez's Human Rights Complaint**

In mid-September, 2003, an incident occurred in the lipstick department between employee Fernandez and manager Vengersammy. Correa Dep. at 96-97. Plaintiff convened a meeting in her office with Fernandez, Vengersammy, Jean Bazile and Elta Semexant to discuss what had happened. <u>Id.</u> at 97. At the meeting, Fernandez explained that had requested another machine, and while he was waiting for it, manager Vengersammy accused Fernandez of wasting time. <u>Id.</u> at 99. Fernandez claimed that he was being singled out because he was Hispanic. <u>Id.</u> at 101. During the meeting Fernandez raised his voice and Bazile told him to keep his voice down. Correa Dep. at 98. Plaintiff then told Bazile that Fernandez was not raising his voice and that he naturally has a high-pitched voice. <u>Id</u>. Plaintiff later recommended that Fernandez be issued a verbal warning for his behavior during the altercation. <u>Id.</u> at 103-04.

At the end of September, 2003, two weeks after the incident

8

between Fernandez and Vengersammy, Fernandez and Bazile had a verbal altercation. Correa Dep. at 107-11, 113. Bazile is an upper management employee who serves as Manager of Internal Affairs. Mouyaris Dep. at 43. He had observed Fernandez sitting on a drum and told him to get up. Correa Dep. at 72. Peter instructed plaintiff to take two or three people to figure out exactly what happened and to get Bazile's side of the story. Correa Dep. at 108. Bazile recommended that they reenact the incident, and plaintiff met with Fernandez to do a reenctment. Id. at 112.

After performing the re-enactment with Fernandez then re-enacting it with Peter, Peter believed Bazile's version of the events and decided that only Fernandez should be officially reprimanded for the incident. Id. at 74. Fernandez claimed that it was discrimination and that he was being reprimanded while his supervisor Bazile was not. Id. at 47. Fernandez believed he was the only person being written up because he was Hispanic. Id. at 78-79.

Plaintiff documented her meeting with Fernandez. Wotorson Aff., Ex. 8. In this document she noted that Fernandez was "very happy" that Sanchez was charging Mana with discrimination because "no one else is willing to speak about the abuse management has given the employees for fear of losing their jobs." Id. Plaintiff recommended to Novick that Mana fire Fernandez after

his second altercation. Correa Dep. at 73-74, 115.

Following the write-up issued by plaintiff regarding the mid-September 2003 incident, Fernandez filed an administrative Title VII complaint with the Human Rights Division alleging that he was issued the warning because of his national origin. Correa Dep. at 82. Plaintiff and Mana management decided against firing Fernandez after learning that he had filed a complaint with the Human Rights Division. Correa Dep. 116. Plaintiff alleges that she was removed from the Fernandez investigation once Mana was made aware of his Human Rights Division complaint. Id. at 150. As with the Sanchez complaint, plaintiff had no involvement in Fernandez's filing of a formal discrimination charge against Mana, id. at 142, nor did she believe that Fernandez had been discriminated against based upon his national origin, id. at 138.

### (4)

### Termination Meeting

On October 8, 2003 plaintiff met with Barbara Novick. Correa Dep. at 138. Novick told plaintiff that "Nikos no longer trusted [plaintiff]." Id. at 139. Novick informed plaintiff that her termination was due to the two human rights complaints Mana received from Sanchez and Fernandez during her tenure. Id. Plaintiff alleges that Novick told her Mouyaris believed she sided with the employees who made the complaints. Id. at 140.

10

Plaintiff told Novick that this was not true, so Novick called Peter and and Nikos Mouyaris into the meeting. Plaintiff alleges that Nikos told plaintiff, "I don't trust you." <u>Id.</u> Peter allegedly then told plaintiff that she would speak Spanish behind closed doors with the employees. <u>Id.</u> Nikos allegedly informed plaintiff that her write-ups were "too editorial" and that "if they fell into the wrong hands" there would be a big problem. <u>Id.</u> at 182. Plaintiff then reassured Nikos that the write-ups would not be falling into the wrong hands because they were merely interoffice memos meant to keep management updated. <u>Id</u>. at 183. The next day, Novak informed plaintiff that the decision to terminate her employment was final. <u>Id.</u> at 142.

## Discussion

Summary judgment is appropriate if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A court should draw all inferences from the supporting records in favor of the nonmoving party, however the mere existence of a factual dispute, by itself, is not sufficient to avoid summary judgment. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury." <u>Id.</u>

at 249-50. Thus, "an employment discrimination plaintiff faced
with a properly supported summary judgment motion must 'do more
than simply show there is some metaphysical doubt as to the
material facts.'" Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.
2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 586 (1986)).

Under both Title VII and section 1981,[3] plaintiff's claims
of discrimination are analyzed under the burden-shifting
framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S.
792 (1973). See McPherson v. New York City Dep't of Educ., 457
F.3d 211, 215 (2d Cir. 2006); Sumner v. United States Postal
Serv., 899 F.2d 203, 208 (2d Cir. 1990). First, it is the
plaintiff's burden to prove a prima facie case of retaliation.
Sumner, 899 F.2d at 208. If the plaintiff meets that burden,
then the burden shifts to the defendant to "'articulate some
legitimate, nondiscriminatory reason' for its action." Id. at
209 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S.
248, 253 (1981)). If the defendant does so, then the burden
shifts back to the plaintiff to show that the reason given is a
pretext. Id.

To make a prima facie case of retaliation in violation of
Title VII or § 1981, a plaintiff must show that: (1) the employee

---

[3] Defendants also argue that plaintiff's § 1981 claim should be dismissed for failure to
allege racial discrimination. Because the claim fails on other grounds, as discussed below, the
racial discrimination issue need not be reached.

engaged in activity protected under Title VII; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action, meaning that a retaliatory motive played a part in the adverse employment action.  See Kessler v. Westchester County Dep't of Social Servs., 461 F.3d 199, 205-06 (2d Cir. 2006); Cifra v. G.E. Co., 252 F.3d 205 (2d Cir. 2001).  See also 42 U.S.C. § 2000e-3(a).

### (1)

### Protected Activity

Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); Deravin v. Kerik, 335 F.3d 195, 203 (2d Cir. 2003).  Thus, § 704(a) "has two separate clauses: an opposition clause as well as an independent participation clause."  Deravin, 335 F.3d at 203, n.6. Plaintiff's claims will be analyzed under both in turn.

### a. Opposition Clause

Plaintiff has failed to present any evidence that she was

engaged in protected activity under § 704(a)'s opposition clause.
The opposition clause requires that the plaintiff has taken, or
threatened to take, some action to protest or oppose illegal
discrimination. See <u>Deravin</u>, 335 F.3d at 204. This can include
informal protests of discriminatory employment practices,
including making complaints to management, writing critical
letters to customers, protesting against discrimination by
industry, and expressing support of co-workers who have filed
formal charges. <u>Sumner</u>, 899 F.2d at 209. Plaintiff's admissions
in her deposition preclude her from claiming protection under
§ 704(a)'s opposition clause.

A finding of unlawful retaliatory discharge is not dependent
on the merits or validity of the underlying claim. <u>Davis v.
State Univ. of New York</u>, 802 F.2d 638, 642 (2d Cir. 1986).
However, in order to claim protection under the opposition clause
the plaintiff must demonstrate that she had a "good faith,
reasonable belief that the underlying challenged actions of the
employer violated the law." <u>Wimmer v. Suffolk County Police
Dep't</u>, 176 F.3d 125, 134 (2d Cir. 1999).

Plaintiff has failed to present any evidence that she has
met these requirements under the opposition clause.
First, plaintiff took no action, and did not threaten to take
action, to oppose acts of discrimination. Correa Dep. at 70-88.
Plaintiff has admitted that she supported the company's policies

14

when confronted by Mana employees with allegations of discrimination. Correa Dep. at 81. Plaintiff admits that she did not support or encourage any of the employees who filed administrative complaints. Correa Dep. at 124, 138. In fact, she did not believe that they have suffered discrimination and she was one of the people they complained had discriminated against them. Id. at 61, 120.

As for the Sanchez complaint, plaintiff alleges that there was a meeting in which Novick and Employment counsel were planning to fire Yoni Sanchez by "setting him up for failure" in violation of Title VII. Correa Dep. at 88. However, plaintiff presents no evidence that she opposed this treatment of Sanchez or protested against the plan. Id. The evidence shows that plaintiff actually took part in the enforcement of this plan to "get rid" of Yoni Sanchez rather than advise management against enforcing this policy. Id. In fact, plaintiff admits that Sanchez specifically mentioned her in his Human Rights Division complaint as an enforcer of discriminatory policies rather than an opponent of them. Id. at 61. Similarly, Fernandez also mentions actions taken by plaintiff in his Human Rights complaint. Id. at 120. Fernandez specifically mentions the warning issued by plaintiff as a significant cause for his discrimination complaint. Id. Nowhere does plaintiff allege that Fernandez named her as an ally or that she did anything to

15

support Fernandez's position. Plaintiff admits that she did not assist or encourage Sanchez or Fernandez with filing their charges of discrimination against Mana. Id. at 122, 124.

Moreover, even if plaintiff's actions could be construed as "opposing" any actions of discrimination, she fails to demonstrate any good faith belief in the underlying discrimination charges. Correa Dep. at 138. Indeed, plaintiff admits that she did not believe that Sanchez or Fernandez were discriminated against based upon their national origin. Id. After the first incident involving Fernandez, plaintiff admits to recommending that he be issued with a warning. Id. at 104. After the second incident involving Fernandez plaintiff recommended that Fernandez be terminated. Id. at 115.

Plaintiff has failed to present any evidence that she "opposed" or "protested" any form of discrimination, and that even if she had, that this opposition would have been supported by good faith belief in the underlying claims. Thus, plaintiff does not meet the requirements of the opposition clause. See Deravin, 335 F.3d at 203 (to meet the requirements of narrower opposition clause "plaintiff himself must have taken some action to protest or oppose illegal discrimination").

**b. Participation Clause**

Plaintiff has also failed to provide any evidence that she

was engaged in protected activities under the "participation clause." The Second Circuit has recognized the explicit language of § 704(a)'s participation clause as being expansive and containing seemingly no limitations. Id. Specifically, the words "participate in any manner" express Congress's intent to confer "exceptionally broad protection" upon employees involved in a Title VII proceeding. Id.

It is undisputed that while employed at Mana, plaintiff investigated allegations of discrimination, tried to resolve tensions that existed at Mana between employees of different ethnic groups, and memorialized her findings during meetings involving discrimination complaints. Mouyaris Dep. at 29-32; Correa Dep. at 30-34. It is also undisputed that plaintiff performed these activities as part of her responsibilities as HR Manager. Wotorson Aff., Ex. 12 (Duties, Responsibility and Job Summ. of Manager, Human Resources Position). Plaintiff does not claim to have performed any of these functions outside the scope of her employment. Correa Dep. at 33-34. Therefore, the main issue that is disputed is whether, as an employee who handled internal complaints of discrimination as part of her job responsibilities, she was engaging in activities protected by Title VII.

The cases in this Circuit have generally favored broad protection of employees who have actually participated in

administrative Title VII proceedings, such as those filed by Sanchez and Fernandez. A person does not have to actually believe the underlying discrimination complaints of a Title VII proceeding to be protected under the participation clause. See Deravin, 335 F.3d at 204. Indeed, the Deravin court held that even "defending oneself against charges of discrimination – to the extent that such defense involves actual participation in a Title VII proceeding or investigation – is 'protected activity' within the scope of § 704(a)." Id. Thus, plaintiff's admission that she did not believe the underlying claims of discrimination would not preclude her from Title VII protection as a matter of law under the "participation clause".

However, unlike Deravin, plaintiff has not presented a sufficient connection between her actions and the administrative charges filed by Sanchez and Fernandez. The language of § 704(a) specifically requires that the "participation" be of a hearing "under this subchapter." 42 USC § 2000e-3(a). While the Second Circuit has not restricted "oppositional activity" to official complaints filed with administrative agencies, see Sumner, 899 F.2d at 209, the actual activities which fall under "participation" are restricted to those which occur in the context of a Title VII proceeding, see Deravin, 335 F.3d at 204 ("We . . . hold that defending oneself against charges of discrimination – to the extent that such defense involves actual

participation in a Title VII proceeding or investigation – is a
'protected activity' within the scope of § 704(a).").
Accordingly, the Second Circuit has analyzed internal
investigations under the opposition clause rather than the
participation clause.  See McMenemy v. City of Rochester, 241
F.3d 279, 283 (2d Cir. 2001).

Plaintiff has admitted in her deposition that her
memorializing of the investigations was "just an interoffice memo
informing management of what was going on and how we can rectify
the issues at hand."  Correa Dep. at 182-183.  Therefore,
plaintiff admits that her only active role was in the form of an
internal investigation subject to internal company standards.
However, in order to gain protection under the participation
clause, the "participation must be in an investigation or
proceeding covered by Title VII, and thus not in an internal
employer investigation."  Bick v. City of N.Y., No. 95-cv-8781,
1997 WL 381801 at *4 (S.D.N.Y July 10, 1997).  See also Sanders
v. Madison Square Garden, L.P., No. 06-cv-589, 2007 WL 2254698,
at *18-19 (S.D.N.Y. Aug. 6, 2007) (holding that "plaintiff's
personal investigation into her sexual harassment charge does not
constitute 'participation' under § 704(a)" and denying cross-
motions for summary judgment), withdrawn in part on
reconsideration, 525 F. Supp. 2d 364, 367 (S.D.N.Y. 2007);
Vandewater v. Canandaigua Nat'l Bank, No. 06-cv-6319, 2007 WL

210384, at *4 (W.D.N.Y. Jan. 26, 2007) (dismissing complaint for failure to state a claim under the participation clause where it alleged participation in an internal investigation that did not involve an EEOC investigation); Kauffman v. Maxim Healthcare Servs., Inc., No. 04-cv-2869, 2006 WL 1983196, at *5 (E.D.N.Y. July 13, 2006) ("Under the 'participation clause,' a plaintiff engages in protected activity by participating in a proceeding brought under Title VII.").[4]

Plaintiff appears to claim that her investigative summaries should be protected under the participation clause because they may be discoverable in Sanchez' and Fernandez' administrative Title VII complaints. Pl's Mem. of Law. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 22. However, plaintiff admits that when she wrote up her investigative summaries she was not even aware that these employees would be filing administrative complaints. Correa Dep. at 80, 113. Although the Second Circuit has specifically stated that an employee's "intended use of the EEO process" constitutes protected activity, Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 175 (2d Cir. 2005) (citing Sword v. Runyon, EEOC DOC 01956313, 1996 WL 284281, at *2 (E.E.O.C. May 17, 1996)), plaintiff admits that she never had any such

_____

[4] The Supreme Court has recently granted a petition for certiorari to determine whether participation in internal investigations is protected activity under the participation clause. Crawford v. Metro. Gov't of Nashville & Davidson County, Tenn., __ S.Ct. __, 2008 WL 161476 (Jan. 18, 2008).

intention, Correa Dep. at 182.

These admissions preclude plaintiff from now claiming that she was "participating" in a Title VII proceeding when she was memorializing her investigations. See Jute, 420 F.3d at 175; cf. Sanders, 525 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) ("[T]o the extent that plaintiff in good faith undertook to document instances of what she genuinely believed was unlawful discriminatory behavior, that would be protected conduct."). Even assuming, arguendo, that these documents were discoverable and thus sufficiently connected to a Title VII proceeding and that plaintiff was aware of this possibility when writing them up, plaintiff's admitted role of objectively writing up her findings is not protected activity. The court in Jute noted that the "participation clause" is not so expansive that it encompasses every situation in which a plaintiff is involved in a Title VII proceeding, no matter how passively. Jute, 420 F.3d at 175. Because plaintiff merely objectively memorialized discrimination complaints, she was at most a "passive" participant in a Title VII proceeding. Id. Accordingly, plaintiff has not shown that she engaged in protected activity under the participation clause.

**c.    Plaintiff's position as human resources manager**

Adopting plaintiff's position would render practically all

21

of her work activities and work product subject to Title VII protection.  Other courts that have addressed this issue of dealing with employees in human resources positions have found that an "employee does not receive special protection under Title VII simply because the employee handles discrimination complaints." Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1082 (9th Cir. 1996).  Courts have acknowledged the difficult situation of reconciling the language of Title VII with the dismissal of an employee who handles discrimination complaints.  Id.  "The position was unique in that it required the occupant to act on behalf of its employer in an area where normally action against the employer and on behalf of the employees is protected activities."  Id. (quoting Smith v. Singer Co., 650 F.2d 214, 217 (9th Cir. 1981)).

In order for employees in human resources positions to claim retaliation they need to first clearly establish that they were engaged in protected activities other than the general work involved in their employment.  See McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486-87 (10th Cir. 1996).  In a case dealing with alleged retaliation under the Fair Labor Standards Act, the Tenth Circuit held that a personnel director did not engage in protected activity when she advised her employer that its wage and hour policies were in violation of the FLSA.  Id. at 1481. Affirming a judgment as a matter of law against the employee, the

court noted that:

> In order to engage in protected activity under [the
> FLSA], the employee must step outside his or her role
> of representing the company and either file (or
> threaten to file) an action adverse to the employer,
> actively assist other employees in asserting FLSA
> rights, or otherwise engage in activities that
> reasonably could be perceived as directed towards the
> assertion of rights protected by the FLSA.

Id. at 1486-87.  Thus, a plaintiff who has not opposed any action

of the employer or assisted an employee with the filing of a

grievance with an outside agency cannot retroactively use her

position to assert protected activity.  See Matta v. Snow, No.

02-cv-862, 2005 WL 3454334, at *25 (D.D.C. Dec. 16, 2005)

("Plaintiff - having failed to identify any specific oppositional

activity in which he was engaged – cannot rely upon his position

as an EEO Counselor alone to provide the prima facie basis for

his opposition claim.").

Here, plaintiff admits that she never filed or threatened to

file an action against her employer while employed at Mana.

Correa Dep. at 142.  Plaintiff admits that her investigation of

complaints and the resolution of those complaints was actually

part of her job description.  Ex. 12.  Plaintiff also admits that

she was acting on behalf of the company while investigating these

grievances.  Id. at 33.  Plaintiff also admits that her activity

of memorializing meetings with employees was her standard

practice as part of her position.  Correa Dep. at 42.  These are

the only activities that plaintiff has presented and none of them

were outside the scope of her employment.

According to plaintiff, the manner in which she investigated these internal complaints and the content of her write-ups is entirely cloaked in Title VII protection. However, plaintiff has not put forward any specific action taken during her employment that is protected under either the opposition clause or the participation clause of § 704(a). Plaintiff concedes that aside from her internal investigations and memoranda - which, as discussed above, were not protected activities - she has engaged in no protected activities. Pl.'s Mem. at 23.

Plaintiff claims instead that she was fired because defendant _imagined_ that plaintiff engaged in protected activities. _Id._ Plaintiff cites to no case in which an employer was found to have violated § 704(a) for terminating an employee whom it imagined to have engaged in protected activities, but who did not actually do so. On reconsideration, the court in _Sanders_ looked at a variation of this issue – may an employer fire an employee whom it believes made bad faith accusations of sexual harassment? _Sanders_, 525 F. Supp. 2d at 366-67. The court reasoned that a complaining employee is protected only if she acts in good faith, but an employer who fires an employee because it believes her accusations are false does so at its own peril, as a jury could well decide otherwise. _Id._ at 367. Likewise, here, if Mana fired plaintiff because it believed that she was

engaged in protected activity, and she was in fact engaged in protected activity, plaintiff would have a prima facie case of retaliation. But plaintiff has not adduced evidence that she was engaged in protected activity.

The burden is on plaintiff to show that she was engaged in a protected activity, in order to avoid summary judgment. <u>Kessler</u>, 461 F.3d at 205-06. Because plaintiff has failed to produce any material facts to show that she was engaged in protected activity prior to her dismissal, she has failed to state a prima facie case of discrimination. <u>Id.</u> Therefore, summary judgment in favor of defendants is granted.


## (2)

### Legitimate, nondiscriminatory reason

The parties dispute whether Mana had a legitimate, nondiscriminatory reason for firing plaintiff. Mana claims that plaintiff sided with employees rather than with the company when performing her duties as human resources manager, causing Nikos Mouyaris to lose faith in her judgment. Plaintiff counters that she did not side with employees and that any other reasons that Mana might have raised during the course of this litigation (although not necessarily in its summary judgment motion) were pretextual. Even if plaintiff has raised an issue of fact, in the absence of any protected activity by plaintiff, these issues

devolve into a question of whether plaintiff was doing her job to the satisfaction of her employer.  This is not a question for a federal court.  <u>See, e.g.</u>, <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243 F.3d 93, 103 (2d Cir. 2001) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." (quoting <u>Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1330 (10th Cir. 1999) (internal quotation marks omitted))).


## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted.  The clerk of the court is directed to close the case.


Dated:     Brooklyn, New York
           March 17, 2008
                                   SO ORDERED:


                          _____/s/_____
                          David G. Trager
                          United States District Judge